Good morning, Your Honor. Good morning, Mr. Zimmerman. I'm John Mark Zimmerman. I represent the appellants in this case. I have a few points I'd like to make in support of the appellant's request that the district court's summary judgment and sanctions order be reversed and that the case be re-amended and re-signed to a different district court judge. First, Flagstar's summary judgment motion was solely limited to the issue of license defense. And Flagstar explicitly conceded in its papers that infringement and claim construction were not an issue in its motion. In response, EON-NET demonstrated that Flagstar has no license as evidenced by the admission of COFAX's attorney Paul Gale that COFAX software is not used for the accused functionality and by the markings on the Flagstar website demonstrating that non-COFAX software is used for the accused functionality. In response to this motion, without a markman hearing, without any briefing on claim construction, and without notice to EON-NET, the district court, sua sponte, construed the claims improperly by limiting the claim term, quote, document or file close, quote, to hard copy document embodiment only, even though the specification provides explicit support for computer file embodiment that does not originate from a scanned hard copy document. And the Patent Office confirmed this by issuing two continuation patents and recently allowing a third patent, which we'll issue later this month, all on the specification of the 697 patent in which the claims are directed towards computer file embodiments. If there was no support in the specification for computer file embodiment, the Patent Office would have rejected all four of these patents under 35 U.S.C. 112. I didn't see in the district court's opinions the claim construction that you are asserting the court reached. Well, she said that it's on the limit to a scanned hard copy document. She said that repeatedly. She said that she found that our construction of a computer file embodiment is illogical in basis. And we pointed out this support in the specification, column 15, lines 24, 30, where information is input to an application program, quote, from computer files from other computers close, quote. Your interpretation is that she held that... Well, she clearly said that, and we point out how briefly she said that she held our construction was baseless and illogical. I'm not so much interested in what she thought of your construction. I'm interested in what you assert was her construction. Well, she said the claims were limited to a scanned hard copy document. And you're relying on this little tiny clause. Well, I realize that could be a crucial clause, but someplace in there it says it's hard to know what that means or input it or something. And I assume if it goes back, if we agree that this case has to be reversed, that you'll be able to go back and under Rule 11 and in good faith show that you have prosecution history or something that shows what that meant? Absolutely. And just if I can explain what's important here, we have to draw a distinction between software that is used on the webpages that are downloaded from the Flagstaff website onto a browser and the software that is used on the application programs residing on the remote Flagstaff web circuit to which information input into webpages are transmitted. Now, in your complaint, you never said that's what you were talking about. Well, we indicated it's for information that's covered by the patent. Your complaint couldn't stand under the recent Supreme Court case. Well, they never questioned our claim construction. They never contacted us about our claim charge. We sent them claim charge, which clearly indicated that the accused functionality was HTML form specifically, the use of content instructions and the use of transmission format instructions. They never questioned us about that ever. So, again, I come back to the point that the functionality issues, the content instructions and the transmission format instructions. And if you look at the distinction I'm trying to make between these two sources of software, by using the browser, the view source function on your browser to examine the webpages that are loaded onto a browser, I was able to find evidence of infringement because all the claim terms there, the content instructions there, and the transmission format instructions. Consequently, it was not as... Where? If you go onto the Flagsco website and you use your view source function, so you see in the source code there's a one-to-one correlation between the webpage and the software behind it, the source code. And you look, and we included this in our appellate brief. Okay? If you look, if you use the view source function to examine the source code for the webpages loaded onto the browser, and you interact with the Flagsco website, you observe the presence of the claim terms. Are you essentially saying that you carried your cellotext burden to successfully resist summary judgment based on your declaration that described your survey of the website? Their summary judgment motion was limited solely to one issue, license defense. Claim construction, they conceded that the patent... Well, that's not answering my question. Are you saying that to the extent you had to carry a cellotext burden, you did it based on your declaration? Yes. We investigated and found infringement. I submitted a claim chart in connection with the pleadings we submitted. Well, the claim chart's not really evidence. It's just a depiction of what you think in your mind based on surveying the website. So it seems to me the evidence is your declaration. Yes, Your Honor, but their whole motion was limited to one issue, license defense, and we proved that they don't have license defense. We had no reason to address claim construction in response to their motion for summary judgment. They stipulated that claim construction and infringement were not at issue. You're referring to the statement at A139 where it says, E.On.Net cannot avoid this conclusion with respect to liability for infringement, even assuming solely for purposes of this motion that the patent is valid and enforceable and that the accused devices are covered by it. That's right. I'm sorry. And then where you're saying the judge, I guess, construed the claims is, and correct me if there's anything else, I guess it would be the statement at the bottom of page A7 that says, Claimant presents no substantive evidence or argument to support its position. That goes on. It does not explain how a patent that describes hard copy documents processing could reasonably be construed to apply to all web-based forms and presents no analysis of the individual claims and their elements. Is that where you're saying the judge necessarily is engaging in a claim construction? Yes. And she explicitly said, give me a moment, Your Honor, in the section of the briefcase, she explicitly said that our construction was illogical and baseless. And she limits it. You're saying you've never advanced a construction, at least at this point, because the only issue was the license, COVAX. Your Honor, there was no mark-up hearing. There was no briefing on claim construction. There was no discovery, no expert testimony regarding whether or did you make any requests for any of those things? We wanted to do discovery. No, no. Did you make a request for a mark-up hearing? No, we did not, Your Honor. Well, then how can you complain that there wasn't a mark-up hearing? Because we thought the whole issue was license defense. The whole reason that they filed the summary judgment and they filed their Rule 11 motions was because they claimed to have a license. And the reason they filed the Rule 11 is because we wouldn't withdraw the complaint based on their license assertion. We investigated their license assertion, and we got confirmation from the attorney for COVAX that, in fact, COVAX software, which is license. You're saying the problem is they moved for summary judgment based on the license defense. You responded, and then you're saying the ground shifted. Without notice to us, without anything, without notice to us. If you look at their brief, there's essentially two pages of argument. They cite four cases. Well, what did you need, a mark-up hearing? I think a mark-up hearing. Well, after the summary judgment was granted and you moved for reconsideration, why didn't you ask for a mark-up hearing then? Your Honor, we thought there was sufficient support in the patent as it exists for our claim construction. But in terms of moving for a mark-up hearing, their whole issue was license defense. And we addressed that. We showed that they didn't have a license defense. But once the judge had ruled and, in your view, added new grounds that hadn't been raised in the motion, but before you asked for reconsideration, you could have sought a mark-up hearing. Well, we did. She scheduled a Rule 11 hearing, and we got into the Rule 11 hearing with regard to whether our pre-suit claim construction and investigation were proper. That's not quite true. You moved for reconsideration. We moved for reconsideration, correct. But that was not decided until after the Rule 11 hearing. But regardless of the Rule 11 hearing, once you saw what her actual ruling was, as you interpreted it, you could have challenged it, including asking for a markman hearing, asking for a discovery, asking for more time to submit additional affidavits or declarations or original documents or other evidence that would bear on the aspect of her ruling that you say caught you by surprise. But as I understand it, you didn't do any of those things. We did not, Your Honor. But even if that were the case, appellant's pre-suit claim construction is not unreasonable in light of the support and the specification for a computer file embodiment and in light of the fact that three patents now, two have been issued and one another one has been allowed, that are even more explicitly directed towards computer and file embodiments. Now, with regard to the Rule 11 hearing, the court resubmitted affidavits and claim charts and described in detail our pre-suit investigation. The district court disregarded it because we didn't do an investigation to some form of hard copy document technology in which the district court improperly limited the 697 patent claims. Nor did you ask for that, I take it, once you filed the suit. Asked for what, Your Honor? A discovery that would tell you exactly how it worked. Your Honor, we didn't have to. That's the point I was trying to make. We didn't have to examine the software on their website to define the elements of infringement. The connection with this pre-suit investigation is important to distinguish between the software used for the webpages that are downloaded onto a user's browser from the website, and the software used for the application programs that reside on the website's remote server, to which information input into those webpages is transmitted by using the View Source function on your browser to look at the source code for those pages, and interacting with the website, you're able to observe the presence of the claim element's evidence in infringement, i.e. the content instructions for extracting information that's entered into the forms, and the transmission format instructions that are used to send it to the application program residing on the remote server. If I understand you correctly, and I may not on this, looking at it, it would seem like the way you construe your patent, it would apply to absolutely every time anybody ever input any information into a website. That's not true at all, Your Honor. You have to use content instructions, and the transmission format instructions have to be used to send it to an application program. And then? Excuse me? And then? That's all the claims require. So you input information... No, you don't input it. It has to be extracted according to content instructions. It has to be transmitted according to customizable transmission format instructions. If the extracted information is sent to, for example, a file, as opposed to an application program, there's no infringement. And we have investigated websites that operate that way and found that there was no infringement. So if the information is just sent to a file as opposed to a program that actually does some sort of processing... Well, okay, but I guess I am assuming that... The reason for inputting information is that it then goes to some place where something is done to it. Yes, but the question is what is done to it and how is it done. Right. If it's just sent to a file and it's not an application program that actually processes the information, there's no infringement. Not all websites employ application programs on the receiving end. The point I'm trying to make is that there's a distinction between the software for the application program that's sitting on the remote server of the website and the software used for the webpages that are loaded onto your browser from the website. Infringement is the elements evidenced in infringement are observable on your end, on the browser end. And since the claim elements exist and are observable at the browser level, it's unnecessary to examine the software for the applications programs residing on the server. What about the software running the webpages that the data is input onto? That's what I'm talking about. Doesn't that need to be investigated? We did, Your Honor. That's where you, by using the view source function, you see the lines of code that, if you look at our appendix, Your Honor, if you look at page A598, there's a page, a webpage that we examined for the cache management function on the Flasco website. If you look at page A886, this is a correlation. You will see here this top line I've highlighted here where it says method post index. This is the format that's used to send the information that's entered into that form according to the transmission format instructions. And if you look at this line here, it says type, name, company ID. If you go back to the form, the webpage, let's see. This is an exact correlation. So that's what I'm talking about. There's a one-to-one correlation. This, if you use your view source function on your browser, when you load the webpage from the website, this is what comes up. If you do the cache management, if you use the view source function, what happens is you get all these pages. And you have to search through these pages to find the content instructions and the transmission format instructions. And that's what we did. And that's how we were able to determine that infringement exists. Okay, so really what you're saying is it wasn't that you needed discovery or a hearing. You just think she was wrong on her ultimate decision. Well, I do believe she's wrong. But from a procedural point, she was incorrect because the whole basis for their motion was license defense. In two pages of argument, they cited four cases, two pertaining to the standard for summary judgment and two pertaining to the fact that license is a defense to infringement. All right, let's hear from Ms. Bailey, and we'll give you two minutes for a rebuttal. Can we agree on anything here? Let's start with seeing if we agree what the scope of the summary judgment motion was and was not. Sure. Well, as the district court noted when it considered the notice argument in the context of Aionet's motion for reconsideration, Flagstar explicitly argued multiple times in its opening summary judgment brief that it was, quote, not liable for infringing the 697 patent as a matter of law, end quote. In addition, Aionet had also received Flagstar's motion for sanctions 21 days prior to Flagstar's opening brief on summary judgment. In that motion, Flagstar clearly argued that Aionet's claim of infringement had no basis and pointed to the motion for summary judgment with respect to that argument. What I'm trying to get you to take a position on that I can understand is whether your summary judgment ground was merely that you had purchased a license that covered the accused functionality. That was not the position taken in the motion for summary judgment. And I guess I should address the point that Aionet has made repeatedly that Flagstar stipulated to infringement somehow in its motion for summary judgment. First answer my question. Sorry. Was your summary judgment motion limited to the fact of the license? No, Your Honor, it was not. Well, what else did it cover? Well, Your Honor, it argued that there was no infringement as a matter of law. Well, I heard that, but because of what? The license or because of the license and B and C and D or what? Well, it argued that there was a license to the only technology that could conceivably infringe the 697 patent. To that extent, the two of you agree that you're relying on the license. But you seem to be saying, but we were relying on something else also. I'm trying to understand. What was the something else? Well, under Celatex, we were pointing out to the district court that there was no evidence in the record with respect to the infringement of any other technology that could possibly come within the claims of the 697 patent. Where's that? Because it seems at 8139. Yes. Starting at 138, you recite the license facts and so forth, correct? Yes. And you end at the top of 139. And then you say in sum, then Flagstar's use of COFAX's technology is encompassed by the license and the E.ON.net attempted to conceal from Flagstar. And then you go on. On the basis of these undisputed facts, Flagstar simply cannot be held liable for infringement. And then down at the bottom, you say you make assumptions, granted you're not solely for purposes of this motion, that the unidentified accused devices include any products or technologies used by Flagstar to manage the process documents received through its website. And those products or technologies fall within the scope of the patent. Exactly. So I guess I'm having a hard time seeing how the motion was not predicated solely on the license. In other words, you seem to be saying, as we're reading it, that infringement would exist except for the license. OK, Your Honor. Well, I'll point you to the exact same language at the bottom of page 8139. And this is where Flagstar is construing the patent to what could conceivably be argued based on the disclosure as a whole. So it's not that Flagstar is saying any device or product it has ever used infringes the 697 patent. It's not assuming that. It's assuming that based on the scope of the 697 patent, the accused devices include any products or technologies used by Flagstar to manage and process documents received through its website. So E.O. Net is taking an arguably broad view of the patent here, identifying the realm of unidentified devices. And what Flagstar seems to be saying is, OK, we don't agree with that view, but assuming it's right, even if it's right, we win because of the license. I mean, that's a perfectly reasonable position to take. I mean, you're not to be criticized for arguing that. I mean, you believe that was the case, and that's a clean and efficient way to dispose of the case with not getting into a lot of things, and that's what you did here, and there's nothing wrong with that. But you seem to be saying even if you accept E.O. Net's contentions as to what the patent covers, we win because of the license. That's the way it was teed up for the judge on summary judgment. That's fine. Well, that's right, Your Honor, and we argued in our motion as the lower court found in the context of the motion for reconsideration that our argument, and our heading here, is that summary judgment should be granted because the undisputed material facts preclude finding Flagstar liable for patent infringement. And those undisputed material facts, in your view, were the license. And you were saying, OK, even if E.O. Net is right about its claim, construction, and the breadth of the patent, because of the, quote, undisputed fact of the license, we win, and that's an appropriate approach. Your Honor, I mean, I don't think you're to be criticized for that. That's an appropriate approach to take. Well, I would argue that on the basis of the approach that we took here, this burden shifted to E.O. Net to say, OK, well, here is how we view the scope of the patent. It's broader than the way you're interpreting the patent. And here is a device that you use, and here is how it infringes my interpretation, E.O. Net's interpretation of the patent. But the thing is, claim construction wasn't an issue, though. It was just the whole issue was the scope of the license, based the way the motion was made. Again, properly so. The motion was made, though, with respect to a certain issue. Why wouldn't it be the fairer outcome here to have further summary judgment motions after appropriate claim construction based on the areas where you and Mr. Zimmerman construe claim phrases in, importantly, different ways and let the district judge choose your interpretation of the phrase or his interpretation of the phrase, and then we have a very fixed picture rather than this very vague, hazy, cloudy kind of picture that seemed to have surrounded the adjudication of the summary judgment motion understandably because of its emphasis on the license. Well, Your Honor, E.O. Net never requested any recourse for that. Well, but if you look at the reconsideration request afterward, I mean, it is true. I think Ms. Bailey is right. They don't come out and say, we want a Markman hearing. But if you look at the request for reconsideration, the bottom of 675 going to the top of 676, they say at lines 4 through 9, plaintiff was not on those that the court would consider granting summary judgment on the issues of claim construction and infringement, i.e., we thought it was just the issue of the license, and therefore did not have a full and fair opportunity to present its case regarding claim construction and infringement. Now, even though it's correct they don't come out and say, please give us a Markman hearing, I think anyone versed in patent law is going to look at that and say that's what they're asking for. And you may win on the second summary judgment motion by shifting the sellotext burden, irrespective of any license, to them, and maybe they can maintain their sellotext burden and maybe they can't. But it seems like it might be a much cleaner, clearer process if it were done that way, rather than our trying to read in between the lines of his summary judgment papers and your summary judgment papers and the opinions of the district judge, none of which seem very clear to me. Well, Your Honor, the standard for Flagstar to amend its burden on its initial motion for summary judgment was to simply point out to the lower court under sellotext that there was no evidence in the record regarding infringement. Well, that's your take on it. But there are documents that appear to be part of the record that can be construed as probative on the question of the license and infringement. Now, they might not be sufficient. I'm not saying that they would win. But it doesn't seem fair to say there is zero evidence relating to claim construction or infringement. It seems like there's a lot more than zero. Whether this is enough, I don't know. Well, Your Honor, there's a lot. I'm sorry. I mean, it looked like you did what appears to be reasonable under the circumstances, although I'm still not sure why there hasn't been any discovery. But you came in and said, we think they're saying the whole thing is based on this license, which they didn't even try to keep from us. If we understand what this patent is, that if there's a valid patent, that it would only be the only thing that we conceivably do that could be covered is under this license. Fine. The problem is they then come back and say, uh-uh. No, really, we're not contesting the whole license thing, but we're saying based on our construction of this patent, there really was something outside of the license, and they point to some other technology that they say it is. In that sense, didn't they actually, maybe unfortunately, meet enough of their burden that it wasn't enough to just stop right there? Well, Your Honor, EONET did not meet its burden. When the burden shifted to EONET, EONET could not just make a conclusory allegation that Flystar uses some technology like this device and just say, well, this device infringes our claim construction. Okay. But it wasn't just what they said. They put in some documents that seemed to suggest some other technology used on some of their website pages other than the licensed COFAX technology. Now, in the final analysis, I have no idea whether that's right or wrong, but just on the face of it, it looks like there is some evidence and there's a lot of unclarity about what the correct construction of the claim terms is, and it seems very hard to review. I can't tell what your construction is. I can't tell what his construction is either, and neither can I be clear in my own mind on what Judge Peckman's construction was. So it seems like the orderly, tidy thing to do would be to have a crisp construction ruling and then redo summary judgment motions, yours, his, or both, based on a clear picture of what the district judge ultimately concludes the claims cover and don't cover. Your Honor, I understand what you're saying. Under Celotix, however, when the burden shifted to EONET, EONET says, we don't agree with your claim construction. So you're right, there's a dispute as to claim construction. But as Judge Peckman said in her order on the motion for reconsideration, her ruling is not based on any particular claim construction. It was based on the fact that all that EONET did in response to Flagstaff's motion for summary judgment was point to a device and say it infringed. That's not quite right. They raised a question about whether the functionalities that were accused were all covered by COFAC's licensed software. And they have some evidence, some documentary evidence, that suggests that those accused functionalities, or some of them at least, operated on software from a different purveyor, not COFAC. And, Your Honor, we do not dispute that EONET put forth documents and has said that digital insight technology is used by the Flagstar website. They have put in documents and have argued that digital insight technology is used by the Flagstar website. However, they did not show that any element of any of their claims, regardless of how those claims are construed, can be found in that technology. So in the complaint, they could have said digital insight technology as well if they wanted to identify something prior to COFAC. But Mr. Zimmerman would say, I think, I guess if I understood him correctly, Mr. Zimmerman would come back and say, well, we didn't have the chance to do that. I mean, you came in properly, I think, and reasonably, moved for summary judgment on that basis. Then, through no fault of yours, the sands kind of shifted and we're in a different situation. And that's why, you know, it may be that it has to go back. Well, with respect, Your Honor, the sands didn't shift because Flagstar made a motion. No, you didn't do anything wrong. No, I know. But Flagstar moved for summary judgment on non-infringement. And so the burden shifted. But it wasn't just non-infringement across the board. It was non-infringement because of the COFAC's license, which then tended to be negated by his response, which leaves other non-infringement questions hanging in the air, it seems to me. But what IANET did not do and what its burden was to do was to take some other accused technology and provide some evidence to the court that there was an issue of fact that that technology read on the patent claims. And what the district court found was, regardless of how you construed the claims, there was no evidence, not only regarding whether there was an element that could be found in the digital insight technology, but even how the digital insight technology worked. All IANET said is Flagstar uses digital insight technology and then provided a conclusive allegation that digital insight technology infringed. They could have identified Flagstar as having used lightbulbs and said lightbulbs infringed. If that's an accurate characterization of the facts, then you have to prevail on that point. I'm not so sure I can agree with you that that's all they did. It looked to me like they had a similar analysis with respect to those website pages as they had to other website pages that they could see from the tags and the way that the remote server was fed certain selective extracted information that there appeared to be actions that met the claim terms. Mr. Bannon, let me ask you, if the case were to go back, what should we do with respect? We'd have to vacate the sanctions order, correct? Yes, Your Honor. If I could just spend my last 36 seconds addressing this last question that you raised, Chief Judge. IANET argues in its reply brief on page 15 that, quote, the accused HTML forms functionality is implemented and operates using software tools from digital insight. IANET is conceding that there is a product that it claims infringes. Now, it hasn't raised, if you look at the summary judgment declaration No, they're not suing the other company. They're suing you. Oh, I understand. And they're saying they see evidence of infringement when they inspect your website. And you're saying, well, don't worry about it because we've got a license. And they say, well, yeah, but the license doesn't cover some of what you do on that website, as the website itself reveals. Now, on that state of the record, it's hard to say that we have a clear-cut framing of any kind of adjudicable issue. And the missing ingredient seems to be not so much the lack of detailed infringement proof as it is the lack of a claim construction, which we can then use as the foundation for doing an infringement analysis based on whatever infringement evidence can be put on the table. If I could just point your attention quickly to the affidavit that was filed by IANET in support of its opposition to the motion for summary judgment. There, you will see that the affidavit is directed only at the fact that Flagstar uses digital insight technology. Yeah, but the record is broader than just that one affidavit. Well, all of the documents submitted in support of that go to proving that Flagstar, in fact, uses digital insight technology. It doesn't go to whether any element... Well, his declaration is broader than just the other company's technology. Well, in this declaration, he has purportedly identified and accused technology, but he has raised no question of fact regarding any element of any claim, no matter how construed, can be found in that technology. He hasn't described the workings of the technology. He hasn't found any element, regardless how it's construed, in the technology. So the reason, I understand that we're in an odd sort of procedural posture here, but this is because when Flagstar met its minimal burden of shifting the burden to... Yeah, but the question is the burden of what? The burden of every infringement or claim construction issue or the burden with respect to license protection. That's where the unclarity is. Well, we'll go back over all the documents. You can be assured of that because it's very hard to get a really tight grasp on this case. We've given you three and a half extra minutes, so let's give Mr. Nimmerman his two minutes of rebuttal, and then we'll study the record and particularly the various sections that both of you have emphasized and highlighted, which is quite helpful to us. Thank you. Okay, thank you, Ms. Bailey. Mr. Nimmerman, two minutes. Real quickly, before we were talking about where Judge Peckman did her construction, I made reference to her comments that it was illogical and baseless. If you look at 821-824, you'll find it there. Also, with regard to the burden shifting, the appellants relied on the stipulation that claim construction infringement was not an issue. And if you look at my footnote 2 in my reply, I think I addressed that. So even if the burden had shifted, I think I can rely on the stipulation. Something with regard to digital insight, the penalty is incorrect. At the Rule 11 hearing, we went into quite a great detail as to what constitutes infringement, the functionality. And going back again to page 503 and page 886 in the appendix, and I note that page 503 says it's digital insight software. Now, we didn't cite digital insight software because we're accusing them of infringement. We cited all the references to digital insight software to show that they use non-COFAX software for the accused function. Wait a minute. Are you saying that you're not saying that the digital insight software used infringes? No, it does. But what I'm saying is they don't have a license by virtue of claiming that they use COFAX software. Why didn't you tell them to begin with that you weren't talking about the COFAX one? You were talking about the digital insight software. Well, I don't know. They never inquired, number one. And number two, when we got the motion, we sent them – I sent them links repeatedly asking them to clarify. I sent them 21 links. But they don't have any burden to answer an informal letter. This wasn't court-ordered discovery. They could have, but they didn't have to, and they didn't. So I don't think you can make anything out of their silence. Last thing, Your Honor. If this case is remanded, I would respectfully request that it be reassigned to a different district court judge. Judge Peckman accused myself and my client of engaging in extortionate conduct. She made me send her order in which she accused me of such conduct to various courts before I practiced. Having accused appellants of engaging in criminal-like conduct, I think it's very difficult to believe that we're going to be able to have this case judged in a fair and unbiased manner for those before her. And recently, the – Well, we will take into account what's in the record and make some appropriate disposition in light of what else we decide on the issue. So we'll look carefully at all of these things that both sides have cited here in the argument. Very helpful to the court. We thank you both. We'll take the appeal under advisory. All rise. The honorable court is adjourned until tomorrow morning at 10 o'clock.